```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MINN. LAWYERS MUT. INS. CO.,   :   CIVIL ACTION
                               :   NO. 09-830
     Plaintiff,                :
                               :
     v.                        :
                               :
                               :
CHRISTOPHER MAZULLO,           :
                               :
     Defendant.                :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                            APRIL 19, 2010

## I. Introduction

This is a declaratory judgment action regarding professional liability insurance. Plaintiff, Minnesota Lawyers Mutual Insurance Company ("MLM"), brings this complaint against Defendant, Christopher Mazullo, Esq. ("Mazullo"), requesting a judgment declaring the parties' respective rights and obligations under an insurance policy concerning Mazullo's claim for defense and indemnity from pending lawsuits against him. MLM is a Minnesota corporation, eligible to underwrite insurance policies in Pennsylvania. Mazullo is a lawyer, Pennsylvania citizen and named insured under a policy with MLM.

On January 29, 2010, MLM filed a motion for summary judgment. On February 16, 2010, Mazullo filed a cross motion for summary judgment and reply in opposition to MLM's motion. MLM responded to Mazullo's cross motion on March 3, 2010. The case is now ripe for disposition. For the reasons that follow

Plaintiff's motion for summary judgment will be granted and Defendant's cross motion for summary judgment will be denied.

**II. Background**

   A.  <u>Underlying Policy</u>

On or about April 1, 2009, MLM issued a Lawyers' Professional Liability Policy ("the Policy") to Mazullo, with effective coverage from April 1, 2008 through April 1, 2009.[1]

---

[1] The coverage section of the Policy provides, <u>inter alia</u>, that:

> [MLM] will pay all sums up to the limit of [MLM's] liability, which the INSURED may be legally obligated to pay DAMAGES due to any CLAIM:
>
> (1) arising out of any act, error or omission of the INSURED or a person for whose acts the INSURED is legally responsible; and
>
> (2) resulting from the rendering or failing to render PROFESSIONAL SERVICES while engaged in the private practice of law or from rendering or failing to render PROFESSIONAL SERVICES as a PART TIME EMPLOYED ATTORNEY OR A GOVERNMENTAL BODY, SUBDIVISION OR AGENCY.
>
> . . . .
>
> "PROFESSIONAL SERVICES" means legal or notary services for others, including, but not limited to, services as administrator, conservator or guardian; executor or personal representative; trustee, escrow agent, title insurance agent; mediator, arbitrator or other participant in a dispute resolution process; activity as a member of a bar association, ethics, peer review, formal accreditation or licensing, or similar professional board or committee, and activities as an author, strictly in the publication or presentation of research papers, articles in attorney trade publications or similar materials only if the fees generated from such work are not greater than ten thousand dollars ($10,000).

B. State Court Actions

First, on August 27, 2008, W. Stanley Delp, Jr. ("Delp") commenced a civil action in the Court of Common Pleas of Bucks County, Pennsylvania, against sixteen defendants, including Mazullo, asserting causes of action stemming from Delp's investment with defendants in several real estate investment projects.[2] Specifically, in his Second Amended Complaint, Delp

---

The Policy does not afford coverage, inter alia, for the following:

(1) any CLAIM for DAMAGES arising out of dishonest, criminal, malicious or deliberately fraudulent act, error or omission of the INSURED, subject to the Innocent Insured Protection provisions.

. . . .

(3) any CLAIM arising out of PROFESSIONAL SERVICES rendered by any INSURED in connection with any business enterprise:
    (a) owned in whole or in part;
    (b) controlled directly or indirectly; or
    (c) managed

by any INSURED, and where the claimed DAMAGES resulted from conflicts of interest with the interest of any client or former client or with the interest of any person claiming an interest in the same or related business enterprise.

. . . .

(13) any CLAIM arising out of the solicitation or sale of specific securities or specific investments by any INSURED.

(Policy, Pl.'s Ex. A.)

[2] This complaint was amended twice, but Mazullo remained a defendant in each complaint. The action captioned W. Stanley Delp, Jr. v. Doylestown Investment Group, LLC, et al., is

brought the following claims against Mazullo: (1) breach of fiduciary duty; (2) conversion; (3) intentional misrepresentation/fraud; (4) negligent misrepresentation; (5) unjust enrichment; (6) violations of sections 5, 10, and 12(a) of the Securities Act of 1933; and (7) violations of sections 401, 403, and 404 of the Pennsylvania Securities Act of 1972. In total, Delp seeks an investment loss in excess of $675,000.00 and punitive damages.

Second, on November 12, 2008, Michael Zoglio ("Zoglio") commenced a civil action in the Court of Common Pleas of Bucks County, Pennsylvania, against seven defendants, including Mazullo, asserting causes of action stemming from Zoglio's investments with defendants in several real estate projects.[3] Specifically, Zoglio brought the following claims against Mazullo: (1) breach of fiduciary duty; (2) conversion; (3) intentional misrepresentation/ fraud; (4) negligent misrepresentation; (5) unjust enrichment; (6) violations of

---

currently pending in the Court of Common Pleas of Bucks County Pennsylvania (dkt. no. 08-08911-24-5). All references to the Delp matter pertain to Delp's Second Amended Complaint. (Delp Compl., Pl.'s Ex. B.)

[3] This complaint was amended twice, but Mazullo remained a defendant in each complaint. The action captioned <u>Michael Zoglio v. Doylestown Investment Group, LLC, et al.</u>, is currently pending in the Court of Common Pleas of Bucks County Pennsylvania (dkt no. 08-08111549-24-1). All references to the Zoglio matter pertain to Zoglio's Second Amended Complaint. (Zoglio Compl., Pl.'s Ex. C.)

sections 5, 10, and 12(a) of the Securities Act of 1933; and (7) violations of sections 401, 403, and 404 of the Pennsylvania Securities Act of 1972. Zoglio seeks compensatory damages, in excess of $50,000.00 and punitive damages.

Essentially, the complaints filed by Delp and Zoglio allege that they invested money through the Doylestown Investment Group ("DIG") to various DIG real estate entities. Delp and Zoglio allege that Mazullo, and the other defendants identified in the complaints, intentionally misrepresented the real estate investment scheme in order to induce Delp and Zoglio to invest in the DIG real estate investments. After the financial investments were made, Delp and Zoglio contend that Mazullo and the other defendants misappropriated their money. Mazullo purportedly prepared the investment agreement and documents for DIG. DIG, in turn, had Delp and Zoglio execute the investment agreements and documents to memorialize their ownership of the DIG entities. Mazullo admits he was the attorney for DIG, as he prepared agreements related to the real estate and other DIG general business documents. (Mazzulo Dep. at 21:12-22; 44:23-24-45:1-3.)

**III. Legal Standard**

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the moving

party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. Id. at 325. Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. Anderson, 477 U.S. at 248-49.

In opposing summary judgment, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." Jones v. UPS, 214 F.3d 402, 407 (3d Cir. 2000). The underlying facts and all reasonable inferences must be viewed in the light most favorable to the non-moving party. P.N. v. Clementon Bd. of Educ., 442 F.3d 848, 852 (3d Cir.2006).

Where federal court jurisdiction is based on diversity of citizenship, as it is here, a court determines which state's substantive law governs by applying the choice-of-law rules of the jurisdiction in which the district court sits, in this case, Pennsylvania. Garcia v. Plaza Oldsmobile Ltd., 421 F.3d 216, 219 (3d Cir. 2005) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 497 (1941)). In this case, the parties have relied principally on Pennsylvania law in their pleadings and briefs and seem to agree that Pennsylvania law governs the insurance contract at issue. Accordingly, to the extent that the law of a state other than Pennsylvania could control the resolution of these motions, the issue has been waived by the parties. See Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1005 n.1 (3d Cir. 1980). Pennsylvania law shall apply.

**IV. Analysis**

   A.  <u>Interpretation of an Insurance Contract</u>

The interpretation of an insurance contract, including an analysis of coverage, is a question of law generally determined by the court. Donegal Mutual Ins. Co. v. Baumhammers, 938 A.2d 286, 291 (Pa. 2007) (citations omitted). The unambiguous terms of the policy are controlling, but to the extent that terms are ambiguous they must be interpreted in favor of the insured. Id. (citations omitted). "Contractual language is ambiguous if it is reasonably susceptible of different

constructions and capable of being understood in more than one sense." Prudential Prop. & Cas. Ins. Co. v. Sartno, 903 A.2d 1170, 1174 (Pa. 2006). "A court's first step in a declaratory judgment action concerning insurance coverage is to determine the scope of the policy's coverage." Gen. Accident Ins. Co. v. Allen, 692 A.2d 1089, 1095 (Pa. 1997) (citing Lucker Mfg., Inc. v. Home Ins. Co., 23 F.3d 808, 813 (3d Cir. 1994). "After determining the scope of coverage, the court must examine the complaint in the underlying action to ascertain if it triggers coverage." Id.

The duty to defend under an insurance policy is broader than the duty to indemnify, in that the duty to defend is triggered whenever the allegations in a complaint may potentially come within the insurance coverage. Lucker Mfg., 23 F.3d at 813. The insurer's duty to defend remains until the insurer is able to show that the factual allegations in the complaint, even if true, do not fall within the scope of the policy. Id. (citations omitted). "If the complaint against the insured avers facts that would support a recovery covered by the policy, then coverage is triggered and the insurer has a duty to defend until such time that the claim is confined to a recovery that the policy does not cover." Gen. Accident Ins. Co. of Am. v. Allen, 692 A.2d 1089, 1095 (Pa. 1997). In determining whether a duty to defend exists, a court must look to the factual allegations in the complaint regardless of the particular causes of action. Mutual Ben. Ins.

8

Co. v. Haver, 725 A.2d 743, 745 (Pa. 1999).

However, "the insurer's duty to defend is limited to only those claims covered by the policy." Allen, 692 A.2d at 1094. Therefore, "[t]o decide whether a duty to defend exists, the court must compare the allegations in the complaint with the provisions of the insurance contract and determine whether, if the complaint allegations are proven, the insurer would have a duty to indemnify the insured." Bombar v. W. Am. Ins. Co., 932 A.2d 78, 87 (Pa. Super. Ct. 2007). The duty to defend remains with the insurer until it is clear that the underlying complaint is not within the scope of coverage. Allen, 692 A.2d at 1095.

The insured has the initial burden of establishing coverage under an insurance policy. Butterfield v. Giuntoli, 670 A.2d 646, 651-52 (Pa. Super. Ct. 1995). If coverage is established, the insurer then bears the burden of proving an exclusion applies. "Where an insurer relies on a policy exclusion as the basis for its denial of coverage and refusal to defend, the insurer has asserted an affirmative defense and, accordingly, bears the burden of proving such a defense." Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999).

B. Plaintiff's Motion for Summary Judgment

1. Policy Coverage and Duty to Defend

First, MLM argues that the Policy covers only claims that result from "the rendering or failing to render professional services" and that Mazullo's actions are not covered by the Policy. Plaintiff contends that neither Delp or Zoglio alleged that Mazullo provided or failed to provide "professional services," but rather they only indicate that Mazullo intentionally induced Delp and Zoglio to invest money and then those invested funds were improperly used. Thus, Delp and Zoglio's allegations are that they invested money in real estate based upon misrepresentations and the defendants, including Mazullo, misappropriated the money.

MLM argues that the only "professional services" that can be implicated in this matter are Mazullo's preparation of the subscription agreements and related documents on behalf of DIG, which DIG in turn had Delp and Zoglio execute. MLM notes, however, that Delp and Zoglio have not alleged that the agreements Mazullo created were negligently and/or improperly prepared, and in turn, those documents caused the alleged damages to Delp and Zoglio. Accordingly, MLM emphasizes that there are no allegations that those "professional services" were improperly performed or more specifically, that there was an error or omission related to the preparation of the investment documents. Thus, MLM contends, Mazullo's "professional services" are not at issue in this matter and MLM does not have a duty to defend

10

Mazullo against the Delp and Zoglio's claims.

Mazullo contends that he was the attorney for all DIG projects and that Delp's complaint alleges that Delp was referred to Mazullo for any of Delp's "legal questions." (Mazullo Resp. at 14.) Thus, Mazullo claims, Delp and Zoglio's claims arise out of Mazullo's performance of his professional duties as the attorney for DIG. Mazullo argues that absent his role as the provider of professional legal services to DIG, it appears unlikely that either Delp or Zoglio could allege any claim against him.

The Third Circuit in <u>Bayer</u> stated, "[t]he Pennsylvania appellate courts have determined that 'use of the undefined phrase 'professional services' may well give rise to a finding of ambiguity' in an insurance policy." <u>Westport Insurance Corp. V. Bayer</u>, 284 F.3d 489, 497 (3d Cir. 2002) (citing <u>Biborosch v. TransAmerica Ins. Co.</u>, 603 A.2d 1050, 1056 (Pa. 1992)).

The term professional services is defined, <u>inter alia</u>, as "legal or notary services for others. . . ." See <u>supra</u> n.1. The Court finds the term "professional services" to be ambiguous. Although, Delp and Zoglio's complaints do not directly implicate Mazullo's legal work, regardless, when the terms of a policy are ambiguous they must be interpreted in favor of the insured. <u>Bayer</u>, 284 F. 3d at 497-498; <u>Donegal Mutual</u>, 938 A.2d at 291. Thus, the Court will interpret the allegations in the complaints as stemming from Mazullo's "professional services" which are

covered by the Policy and MLM has a duty to defend. See e.g., Home Ins. Co. v. Law Offices of Jonathan DeYoung, P.C., 32 F. Supp. 2d 219, 230 (E.D. Pa. 1998) (denying summary judgment to attorney's liability insurer and concluding that under Pennsylvania law, "[b]ecause the term 'professional services' is undefined in the policy, it is possible for reasonable minds to reach varying conclusions" as to whether an attorney who had invested funds on client's behalf had rendered professional services).

2. Dishonest or Fraudulent Conduct Exclusion

Having determined that the claims fall within the scope of the Policy, the court must determine whether an exclusion applies. MLM argues that the Policy expressly excludes coverage for "any claim for damages arising out of the dishonest, criminal, malicious or deliberately fraudulent act, error or omission of the insured, subject to the Innocent Insured Protection provisions." See supra n.1. MLM contends that because Delp and Zoglio bring claims for intentional misrepresentation/fraud and further allege that Mazullo's conduct was malicious, willful, shocking, outrageous and in bad faith, these claims are excluded from coverage.

Mazullo responds that the exclusions do not bar coverage because he has specifically denied that he engaged in any dishonest, criminal, malicious, or fraudulent activities.

12

Moreover, he notes, the claims of Delp and Zoglio are not limited to those alleged activities. Although the Second Amended Complaints do not allege negligence, Mazullo claims that they generally allege claims against Mazullo that do not arise out of fraud or the sale of securities or investments. Thus, he argues that his actions are not excluded under the Policy.

In Westport Ins. Corp. v. Hanft & Knight, P.C., 523 F. Supp. 2d 444 (M.D. Pa. 2007), an insurance company sought a declaratory judgment of no duty to defend or indemnify. The insured law firm and the estate of an insured attorney were facing claims of breach of contract and breach of fiduciary duty, arising out of the deceased attorney's obtaining loans through false representations. The exclusion provision in Hanft is similar to the exclusion in the instant case. That provision provided that the policy, "shall not apply to any Claim based upon, arising out of, attributable to, or directly or indirectly resulting from any criminal, dishonest, malicious or fraudulent act, error, omission or Personal Injury committed by an Insured." Hanft, 523 F. Supp. 2d at 458.

The Hanft court concluded that this provision excluded coverage because the allegations in the complaint, which stated that the insured "unfairly took advantage of the [claimants] by deceiving them into lending money through false representations," clearly demonstrated dishonest acts. Id. The claimants countered

13

that the underlying complaint alleged that the insured committed fraudulent and dishonest acts only in the alternative and that a jury could conclude that the insured was merely negligent. The Court rejected this argument, "in paragraphs of the complaint that are incorporated into every underlying count, the [claimants] allege that [the insured] "took unfair advantage of [them]", made false representations to induce them to lend money, "engaged in improper self-dealing, abused the relationship of trust . . . and otherwise failed to conduct himself in accordance with acceptable professional standards", and "breach[ed] his professional obligations to his clients with respect to each and every loan". Based on these allegations, no reasonable jury could conclude that [the insured] was negligent, but not dishonest." Id. (internal citations omitted).

Looking at the factual complaints in this case, as in Hanft, Delp and Zoglio make allegations of dishonesty, fraud and maliciousness.[4] Delp accuses Mazullo of actions and/or omissions that were intentional, knowing, willful, wanton, malicious, and/or reckless with the specific intent of harm. (Delp Compl. at ¶¶ 109-11, 115, 120, 126-127, 137, 156, 165 and 168.) Zoglio makes similar allegations. (Zoglio Compl. at ¶¶ 40, 49, 56, 85

---

[4] Mazullo has not refuted MLM's comparisons of the instant case to Hanft or explained how it may be distinguished. Moreover, he has not referenced any cases where courts have agreed with his interpretation of a similar exclusion and found that the insured was covered in similar circumstances.

and 97.) These alleged dishonest, malicious and deliberately fraudulent actions are precisely the types that are intended to be excluded from coverage under the Policy. As in <u>Hanft</u>, the Court finds that the Policy excludes coverage of dishonest, malicious, or fraudulent conduct.[5]

Accordingly, Plaintiff has shown it is entitled to judgment as a matter of law.

### C. Defendant's Motion for Summary Judgment

For the same reasons discussed above, Defendant Mazullo has failed to show that he is entitled to judgment as a matter of law.

**V. Conclusion**

Plaintiff's motion for summary judgment is granted and Defendant's cross motion for summary judgment is denied. It is further declared that Plaintiff has no duty to defend or indemnify its insured in <u>W. Stanley Delp, Jr. v. Doylestown Investment Group, LLC, et al.</u>, (dkt. no. 08-08911-24-5) and <u>Michael Zoglio v. Doylestown Investment Group, LLC, et al.</u>, (dkt. no. 08-0811549-24-1) both currently pending in the Court of Common Pleas of Bucks County Pennsylvania. An appropriate order follows.

---

[5] Given that the claims asserted against Mazullo are excluded from coverage on the basis of the dishonest or fraudulent conduct exclusion, the Court will not reach the issues of whether any other exclusions to the Policy are similarly applicable.